# In the United States Court of Federal Claims

Nos. 19-449; 25-425 (consolidated)
Filed: May 8, 2025

|   |   |
|---|---|
| THE MODERN SPORTSMAN, LLC, et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| and | ) ) |
| SLIDE FIRE SOLUTIONS, LP, et al., | ) ) |
| Plaintiff-Intervenors, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |
| SLIDE FIRE SOLUTIONS, LP, et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant. | ) ) ) |

**OPINION AND ORDER**

*SMITH,* **Senior Judge**

    This case arises from a nationwide federal rule requiring the destruction or surrender of bump-stock devices ("bump stocks"). The plaintiffs in the lead case ("plaintiffs")—The Modern Sportsman, LLC; RW Arms, Ltd.; Mark Maxwell; and Michael Stewart—have alleged that they owned bump stocks and were forced to destroy them by operation of the rule. In the operative complaint, they allege that the rule constituted a taking, or alternatively, an illegal exaction.

The government moves to dismiss both claims. For the reasons provided below, (1) as to the takings claim, the Court denies the motion, except that it defers consideration of whether the taking was "authorized" pending the conclusion of related proceedings in the Federal Circuit; and (2) as to the illegal exaction claim, the Court grants the motion.

The Court also briefly discusses attorneys' duty of candor and truthfulness per Rule 11(b) of the Rules of the United States Court of Federal Claims ("RCFC").

I. **Background and Procedural History**

The National Firearms Act of 1934 ("NFA"), as amended, makes it a criminal offence "for any person to transfer or possess a machinegun" not lawfully obtained prior to May 19, 1986. 18 U.S.C. § 922(o). A "machinegun" is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The term "also include[s] . . . any part designed and intended . . . for use in converting a weapon into a machinegun." *Id.*

This case relates to the federal government's attempt—following a 2017 mass shooting in which the perpetrator used bump stocks to kill fifty-eight people and wound an additional five hundred—to ban bump stocks by classifying them as machineguns. In 2018, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") promulgated a final rule ("the Rule") "clarify[ing]" that bump stocks are machineguns, as that term is defined in § 5845(b). *Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514, 66,514 (Dec. 26, 2018). ATF also gave "current possessors" of bump stocks ninety days to either "undertake destruction of the devices" or "abandon [the] devices at the nearest ATF office" for destruction. *Id.* at 66,549.

Plaintiffs complied with the Rule by destroying their bump stocks, and soon after, on March 26, 2019, sued in this Court for just compensation under the Takings Clause of the Fifth Amendment. *See* Compl. 1, ECF No. 1. The Court dismissed under the police power doctrine, which holds that governments are understood to "condemn contraband or noxious goods" under their police power, not their eminent domain power, and therefore do not need to pay just compensation. *The Modern Sportsman, LLC v. United States*, 145 Fed. Cl. 575, 576 (2019) (quoting *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008)). The Federal Circuit affirmed on different grounds, holding that plaintiffs did not have a "property interest" in being free from "an authorized and legally valid interpretation of the statutory prohibition" against machineguns. *McCutchen v. United States*, 14 F.4th 1355, 1366 (Fed. Cir. 2021) (incorporated by reference in *The Modern Sportsman, LLC v. United States*, No. 20-1107, 2021 WL 4486419, at *1 (Fed. Cir. Oct. 1, 2021)). The Supreme Court denied certiorari, 143 S. Ct. 422 (2022), and that was that.

Except it was not.  While plaintiffs' case was winding its way through the courts, other bump stock owners challenged the legality of the Rule under the Administrative Procedure Act ("APA").  Following a drawn-out battle, in *Garland v. Cargill*, the Supreme Court held that bump stocks are not machineguns and struck down the Rule.  602 U.S. 406, 415 (2024).

Plaintiffs then asked the Court to revive this lawsuit, which the Court did, on September 19, 2024.  Order Granting Relief from Judgment, ECF No. 30.  The next day, plaintiffs amended their pleadings to add an illegal exaction claim in addition to their taking claim.  Second Am. Compl. 8–10, ECF No. 31.

On October 11, 2024, the government filed the instant motion to dismiss for failure to state a claim.  Def.'s Mot. Dismiss, ECF No. 34 [hereinafter Mot. Dismiss].  On November 12, 2024, plaintiffs filed their response.  Pls.' Resp. Mot. Dismiss, ECF No. 36 [hereinafter Resp.].  For reasons not relevant here, briefing was stayed from November 19, 2024, to April 23, 2025.  *See* Order Staying Briefing, ECF No. 37; Order Lifting Stay, ECF No. 65.  On May 5, 2025, the government filed its reply.  Def.'s Reply in Support of Mot. Dismiss, ECF No. 70 [hereinafter Reply].

## II.    Legal Standard[1]

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must allege facts that, if taken as true, "plausibly suggest[] . . . a showing of entitlement to relief."  *Kam-Almaz v. United States*, 682 F.3d 1364, 1367 (Fed. Cir. 2012) (citations omitted).  A court need not "accept as true a legal conclusion couched as a factual allegation."  *Id.* at 1368 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

## III.    Discussion

### A. Takings Claim

The Takings Clause of the Fifth Amendment states: "[N]or shall private property be taken for public use, without just compensation."  U.S. Const. amend. V.  Plaintiffs allege that the government took their bump stocks "as a result of [ATF's] unlawful determination that" bump stocks "are 'machineguns' . . . and must therefore be surrendered to the ATF or destroyed in a manner prescribed by the ATF."  Second Am. Compl. 1.

---

[1]    This Court has jurisdiction to hear "claim[s] against the United States . . . founded upon the Constitution" under the Tucker Act.  28 U.S.C. § 1491(b)(1).  Our jurisdiction lies over both just compensation and illegal exaction claims, which are grounded in the Takings Clause and the Due Process Clause of the Fifth Amendment respectively.  *Boeing Co. v. United States*, 968 F.3d 1371, 1384 (Fed. Cir. 2020); *Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987).

3

The government argues that plaintiffs fail to state a claim for a physical taking, *per se* regulatory taking, or *Penn Central* regulatory taking. Mot. Dismiss 10–14, 20–24; Reply 2–10. It also preserves the argument, pending final resolution of on-point litigation in the Federal Circuit, that the Rule was "unauthorized" for Tucker Act purposes, and therefore incapable of creating liability against the federal purse.[2] Mot. Dismiss 14–15; Reply 10–11.

* * *

A physical taking refers to "[t]he paradigmatic taking" involving "a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). A regulatory taking, in contrast, involves "regulation of private property . . . so onerous that its effect is tantamount to a direct appropriation or ouster." *Id.* A regulation effects a taking *per se* if it requires the owner to suffer a physical invasion, *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 152 (2021); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 427 (1982); or eliminates "*all* economically beneficial uses" of their property, *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992) (emphasis in original). If the regulation does not meet those conditions, courts may still find a taking after balancing the "character of the government action"; its "economic impact"; and the owner's "distinct investment-backed expectations." *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978). The Takings Clause protects real and personal property alike. *Horne v. Dep't of Agriculture*, 576 U.S. 350, 359–60 (2015).

The Court first addresses whether plaintiffs met the pleading standard for a physical taking. The government asserts that plaintiffs have not, because "they do not allege that the Government physically seized or appropriated their bump stocks." Mot. Dismiss 20. It acknowledges that plaintiffs alleged that "the Rule required bump stock owners to destroy or surrender the devices to ATF." Reply 2. That does not pass muster for the government, however, because the government "did not seize any devices or otherwise physically invade plaintiffs' property." *Id.* at 3.

The Court cannot agree. Let us be clear that the government need not literally force private persons to turn over their property for a taking to occur; a legal requirement is sufficient. For example, in *Horne*, the Supreme Court held that an administrative order requiring raisin croppers to "give a percentage of their crop to the Government, free of charge" effected a compensable appropriation. 576 U.S. at 355.

---

[2]   The government's opening brief also argued that the Rule remains shielded by the police power doctrine notwithstanding the Supreme Court's decision in *Cargill*. Mot. Dismiss 15–20. However, it withdrew that contention in its reply brief. Reply 2 n.2; *see also Mugler v. Kansas*, 123 U.S. 623, 661 (1887) ("Under our system [the police] power is lodged with the *legislative* branch of the government.") (emphasis added); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1332 (Fed. Cir. 2006) (stating that the police power doctrine applies to "items *properly* seized by the government") (citation omitted and emphasis added).

4

The government did not literally oust the farmers from possession of the raisins, yet a taking occurred because the order made a "formal demand" backed by fines and penalties. *Id.* at 362, 367–68. It is the same here. The Rule plainly states: "This final rule requires the destruction of existing bump-stock-type devices." 83 Fed. Reg. at 66,549. It then instructs: "Individuals who have purchased bump-stock-type devices prior to the implementation of this rule must destroy the devices themselves prior to the effective date of the rule or abandon them at their local ATF office." *Id.* Finally, it makes clear that "individuals are subject to criminal liability . . . for possessing bump-stock-type devices after the effective date of regulation." *Id.* at 66,525. These statements undoubtedly constitute a formal demand to destroy or transfer possession of bump stocks, satisfying the standard under *Horne*.

The government counters that the Rule did not make any formal demand but "merely clarified" the "longstanding statutory law" banning machineguns. Reply 3. Under this theory, "[a]ny statement in the Rule regarding the destruction or abandonment of the devices was simply the natural consequence" of the statute. *Id.* at 3. In other words, the Rule is an interpretative rule (not a legislative rule), which "does not result in legal compulsion or obligation" and therefore cannot take property. Mot. Dismiss 23; *Stupp Corp. v. United States*, 5 F.4th 1341, 1352 (Fed. Cir. 2021) (explaining that legislative rules are rules that "attempt to make new law or modify existing law" (quoting *Kisor v. Wilkie*, 588 U.S. 558, 582 (2019))).

That too is incorrect. Put plainly, the government essentially argues that the Rule is an informational document apprising the public of pre-existing legal obligations. The problem for the government is that this theory is rejected in the text of the Rule itself. If the Rule were clarifying that bump stocks are machineguns for purposes of gun control statutes, then, by necessary implication, it also clarified that "any bump stock made after 1986 [when the machinegun ban was enacted] has always been a machine gun," *Guedes v. ATF*, 920 F.3d 1, 17 (D.C. Cir. 2019), instantly making felons out of nearly all bump-stock owners. But the Rule explicitly disclaimed that possibility, stating: "The [ATF] disagrees that law-abiding citizens would instantly become felons under this rule. This final rule provides specific information about acceptable methods of disposal, as well as the timeframe under which disposal must be accomplished *to avoid violating 18 U.S.C. 922(o)*." 83 Fed. Reg. at 66,530 (emphasis added). Not "avoid continuing to violate," but "avoid violating."

Lest one think that the ATF is using the words "avoid violating" loosely to mean non-enforcement of past § 922(o) crimes, the Rule further states: "The rule would criminalize only future conduct, not past possession of bump-stock-type devices that ceases by the effective date of this rule." *Id.* at 66,525.

Nor did the ATF employ the words to mean amnesty for past crimes: "The [ATF] disagrees that an amnesty period is possible in this scenario. While in 1968 Congress

5

left open the possibility of future amnesty registration of firearms subject to the NFA [National Firearms Act], ATF has long held that it eliminated any possible amnesty for machineguns in 1986." *Id.* at 66,536.

The Court takes the ATF at its word and concludes that the Rule created new legal obligations that did not exist prior to the effective date of the Rule.[3]

\* \* \*

Having concluded that plaintiffs have stated a claim for a physical taking, the Court need not decide whether they have also met the pleading requirements for a regulatory taking. *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534–35 (1992) ("[A]rguments that the [government action] constitutes a taking in two different ways, by physical occupation and by regulation, are not separate *claims*." (emphasis in original)).

\* \* \*

To state a claim, plaintiffs also must show that the ATF was "authorized" to "create a claim against the Government" even though its actions were contrary to law. *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998) (quoting *Hooe v. United States*, 218 U.S. 322, 335 (1910)). The Federal Circuit's recent opinion in *Darby Development Co., Inc. v. United States*, 112 F.4th 1017 (Fed. Cir. 2024), greatly expanded the zone of authorized-though-unlawful actions, and the government concedes that the ATF's actions were "authorized" under *Darby*. Reply 10. However, the government also notes that the mandate in *Darby* has yet to be issued, and that the appeals court is considering the government's petition for rehearing *en banc*. *Id.*

Considering the pending appellate proceedings in *Darby*, the Court defers ruling on the question of authorization and directs the parties to file updates on the status of *Darby* as described in the Conclusion section of this opinion.

### B. Illegal Exaction Claim

---

[3] Given the Court's holding that plaintiffs' legal obligation to destroy or surrender their bump stocks arises from the Rule, it is not necessary to determine whether the Rule meets other indicia of a legislative rule. In any event, the Rule contains all the contextual cues typical of a legislative rule: It was passed after notice and comment; invoked the agency's authority to implement the National Firearms Act and the Gun Control Act; and asserted that the Rule would be entitled to *Chevron* deference in court. *See Guedes*, 920 F.3d at 17; *see also Cargill v. Barr*, 502 F. Supp. 3d 1163, 1183–85 (W.D. Tex. 2020), *rev'd on other grounds sub nom. Garland v. Cargill*, 602 U.S. 406 (2024). Most importantly, as explained in the main body of the opinion, the text of the Rule "unmistakabl[y]" signals that the ATF intended to alter the legal status quo. *Guedes,* 920 F.3d at 20.

The second count in plaintiffs' operative complaint alleges that the Rule, being unlawful, effected an illegal exaction of their property. Second Am. Compl. 8–10. Not to be confused with *takings* involving "unconstitutional conditions" or "exactions," *see, e.g.*, *Dolan v. City of Tigard*, 512 U.S. 374 (1994), an illegal exaction claim is grounded in the Due Process Clause of the Fifth Amendment, *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (citing *Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356, 1363 (Fed. Cir. 2002)).[4]

An illegal exaction claim generally "involves *money* that was 'improperly paid, exacted, or taken from the claimant.'" *Id.* (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)) (emphasis added). Claims not involving the recovery of money may still implicate an illegal exaction, but they are subject to a more stringent pleading requirement, as follows: If the plaintiff seeks "recovery of money paid over to the United States," he does not need to identify a money-mandating statute authorizing recovery, *Boeing Co. v. United States*, 968 F.3d 1371, 1383 (Fed. Cir. 2020); but for "claims for money damages for government action different from recovery," the law is "[]clear" that "a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by necessary implication, that the remedy for its violation entails a return of money unlawfully exacted," *id.* (citations and internal quotation marks omitted).

No more is needed to resolve this dispute. Plaintiffs concede that they are not seeking the return of money paid to the United States, only "property and property rights." Second Am. Compl. 9; *see* Resp. 29–31. Plaintiffs also fail to argue—much less "demonstrate," *Boeing Co.*, 968 F.3d at 1383—that the Rule, or any statute underpinning the Rule, expressly or by necessary implication provides a cause of action for money damages for the surrender or destruction of bump stocks. *See* Resp. 29–31. Therefore, plaintiffs' illegal exaction claim cannot proceed.[5]

Plaintiffs argue that, although they did not actually pay any money to the government, they did so "in effect." Resp. 29 (quoting *Eastport S.S.*, 372 F.2d at

---

[4] Under an alternative theory, which is currently not the law but has been called "persuasive[]" as an originalist matter by this Court, illegal exactions are "a type of Federal common law claim." *Perry v. United States*, 149 Fed. Cl. 1, 28 n.25, 31 n.36 (2020) (citing Renée Burbank, *Illegal Exactions*, 87 Tenn. L. Rev. 315, 349–52 (2020)). The theories are not necessarily incompatible because the Due Process Clause may have codified the pre-existing common law claim. *Cf. District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

[5] The Court does not reach this conclusion lightly. We recognize that, should the Federal Circuit vacate and overturn the panel opinion in *Darby*, an illegal exaction might well be the only non-legislative path to recovery for an unlawful governmental transgression into the realm of private affairs. However, permitting illegal exaction claims for seizures not involving money would bend the Tucker Act to the point of breaking. For example, the entire controversy over the distinction between "authorized" and "unauthorized" just compensation claims would be rendered nugatory—because "unauthorized" takings would simply be recast as illegal exactions.

1007). As an initial matter, plaintiffs misunderstand the law when they state that non-payment of money, directly or in effect, "foreclose[s] the application of the law of illegal exactions." *Id.* at 30. If the government were right (which it is) that plaintiffs have not directly or effectively paid money to the government, plaintiffs would still have been able to state an illegal exactions claim had they identified a money-mandating source of law. *See Eastport S.S.*, 372 F.2d at 1007. Thus, this case turns on the "in effect" language only because they have not identified a money-mandating source of law (and, presumably, none exists).

With that clarified, the Court concludes that the destruction of bump stocks does not amount to a payment of money in effect. The phrase "in effect" does not expand the category of self-money-mandating illegal exaction claims to cases not involving the payment of money; instead, it simply refers to cases where the government *gained* money even though the money did not flow *directly* from the plaintiff to the government.

Every case cited by plaintiffs shows as much. Start with instances where courts rejected the claimant's argument. In *Eastport S.S.*, the illegal exaction claim was based in part on recovery of $10,000 paid directly to the government, and in part on "business loss[es] . . . incurred" due to unlawful government actions. 372 F.2d at 1009. The Court of Claims held that the exaction claim was self-money-mandating as to recovery of the $10,000, but *not* for recovery of business losses. *Id.* In *Piszel v. United States*, the Federal Circuit held that a claimant had *not* paid the government money directly or "in effect" when the government allegedly "caused Freddie Mac not to pay him his severance payments." 833 F.3d 1366, 1382 (Fed. Cir. 2016). In *Westfed Holdings, Inc. v. United States*, this Court similarly held that the government was not paid money "in effect" when the government allegedly "prevented" money "from coming into plaintiff's account." 52 Fed. Cl. 135, 153 (2002).

The cases where the claimant succeeded do not help plaintiffs either. In *Aerolineas Argentinas v. United States*, the appeals court held that an airline paid the government money "in effect" when the airline *spent* money to "take custody . . . of aliens who were in 'stowaway' status" pending immigration proceedings. 77 F.3d 1564, 1578 (Fed. Cir. 1996). The reason, the opinion explained, is that the "government ha[d] required" the monies spent by the airline "to be paid." *Id.* at 1572. In *Bowman v. United* States, this Court did hold that the government exacted money from the claimant "in effect" when the government seized "two aircraft and real property," but only because it "then proceeded to sell th[e] property and *received money in return*." 35 Fed. Cl. 397, 401 (1996) (emphasis added).

In sum, plaintiffs cannot be said to have paid money, directly or "in effect," for a very straightforward reason: They lost personal property, not money. Indeed, plaintiffs have not alleged that they spent any money for any purpose; or paid any money to any

8

party, be it the government or someone else.  Plaintiffs therefore needed to point to a money-mandating source of law within the Rule or the relevant statutes.  Because they have not, their illegal exaction claim fails as a matter of law.

\* \* \*

That ends the matter, but the Court feels compelled to say a few words about the litigation tactics of those attorneys who certified plaintiffs' response brief, ECF No. 36, and plaintiffs' motion for relief from judgment, ECF No. 23.

In the filings just identified, plaintiffs quote a decision of this Court, *Andres v. United States*, for the proposition that an exaction claim lies when: "(1) money *or property* was exacted by the government and (2) the exaction violated a provision of the Constitution, a statute, or a regulation.  *Andres v. United States*, No. 03–2654, 2005 WL 6112616, at \*2 (Fed. Cl. July 28, 2005)."[6]  Resp. 29 (emphasis added); *see also* Mot. Relief J. 17.

In fact, *Andres* does not contain the words "or property."  Granted, plaintiffs paraphrased *Andres* instead of quoting it, but the opinion does not implicitly support the reference to (non-monetary) property either.  Ms. Andres made a demand for withheld *money*—$55,000 in "back pay [that] she claims the Postal Service was required to pay her as the result of an arbitrator's decision"—and the Court rejected her claim while confining commentary to the facts of the case.  2005 WL 6112616 at \*3.  Furthermore, Judge Wolski directly refuted the argument plaintiffs now make by explaining: "[T]he 'in effect' language has generally only applied where the Government has required a plaintiff to *pay money to a third party* . . . or where the Government has taken a plaintiff's property and *converted that property into money*."  *Id.* (emphasis added).

This should have left no doubt in the attorneys' minds that it would be misleading to add the words "or property" to Judge Wolski's recitation of the legal standard.

RCFC 11(b) permits attorneys to advocate for "extending . . . existing law or for establishing new law."  R. Ct. Fed. Cl. 11(b)(3).  But it is not advocacy to pretend that a litigant's preferred version of the law already exists.  Nor is mistake a valid excuse.  R. Ct. Fed. Cl. 11(b) (requiring the certifying attorneys to conduct "an inquiry reasonable under the circumstances").  The attorneys who certified the filings at issue are reminded of their duty to "act with candor and truthfulness in their dealings with the court."  *Brooker v. United States*, 107 Fed. Cl. 52, 58 (2012).  Hopefully, another occasion to contemplate sanctions will not present itself in this litigation.  *See* R. Ct. Fed. Cl. 11(c)(3).

IV. Conclusion

---

[6] The decision to rely on an unpublished trial-court opinion for a legal standard clearly laid out in many published, precedential opinions is itself questionable.

The Court **GRANTS IN PART, DEFERS IN PART,** and **DENIES IN PART** defendant's motion to dismiss the claims of the lead plaintiffs, ECF No. 34. The parties **SHALL** file a joint status report notifying the Court within **five days** of the Federal Circuit's resolution of the government's motion for rehearing *en banc* in *Darby Development Co., Inc. v. United States*, No. 22-1929 (Fed. Cir.).

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge